**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**



NEWPORT NEWS HOLDINGS CORP.,

      Plaintiff,

v.                                      Action No. 4:08cv19

VIRTUAL CITY VISION, INC., et al.,

      Defendants.

### OPINION AND ORDER

Plaintiff, Newport News Holdings Corporation ("NNHC"), brings this trademark infringement and anticybersquatting action against Defendants, Virtual City Vision, Inc. and Van James Bond Tran (collectively, "VCV"), alleging that VCV is using NNHC's trademark with the bad faith intent to profit from that use. Presently before the Court is NNHC's Motion for Partial Summary Judgment on Count Three of the First Amended Complaint. After considering the motion, counsel's accompanying memoranda,[1] and oral arguments before the Court on December 19, 2008, and for the reasons set forth herein, the Court GRANTS in part and DENIES in part Newport News Holdings Corporation's Motion for Partial Summary Judgment.

---

[1] The accompanying memoranda include Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment ("Pl.'s Mem. Supp."), Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def.'s Mem. Opp'n"), and Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Reply").

## I. Facts and Procedural History

Beginning as early as 1987, NNHC has offered women's clothing and accessories for sale by mail order catalog; as early as 1999, NNHC offered these same goods for sale over the Internet. First Amended Compl. ¶ 7; Pl.'s Mem. Supp. 1. NNHC owns five federally registered trademarks, on the United States' Patent and Trademark Office's Principal Register, for the mark "NEWPORT NEWS." Pl.'s Mem. Supp. 2, Ex. A-3. The trademarks cover women's clothing and accessories, the offering of these items for sale through catalogs and the Internet, and the domain name "NEWPORT-NEWS.COM."[2]  Id.

VCV owns the domain name NEWPORTNEWS.COM.[3]  VCV owns at least thirty-one (31) domain names that incorporate geographic locations. Pl.'s Mem. Supp. 21; Def.'s Mem. Opp'n 15. VCV's original intent in acquiring domain names related to geographic locations, including the NEWPORTNEWS.COM domain, was to create websites tailored to those locations "where residents of, and visitors to, these cities could find information and advertising related to those cities."  Id.

In 2000, the parties participated in an Internet Corporation

---

[2] NNHC purchased the domain name NEWPORT-NEWS.COM in November 1997. Pl.'s Mem. Supp. 2. The Court notes that NNHC attempted to purchase the domain name NEWPORTNEWS.COM but was unable to because VCV purchased the domain name NEWPORTNEWS.COM in October 1997. Id.

[3] VCV also owns NEWPORTNEWS.VCV.COM as a sub-domain of its VCV domain. The NEWPORTNEWS.VCV.COM domain name is not currently associated with an operative website. Def.'s Mem. Opp'n 19.

2

for Assigned Names and Numbers ("ICANN") arbitration proceeding[4] in which NNHC alleged that the NEWPORTNEWS.COM domain name was confusingly similar to NNHC's NEWPORT NEWS mark and that VCV registered the domain in bad faith.[5]   Pl.'s Mem. Supp. 3.   The arbitrator concluded that the domain name NEWPORTNEWS.COM is identical to NNHC's registered mark but that the use of the domain at the time of the proceeding was not confusingly similar to NNHC's mark.   Pl.'s Mem. Supp. Ex. A-10 at 13; Def.'s Mem. Opp'n 3.   The arbitrator also concluded that VCV's use of the domain at the time was legitimate and that there was no evidence of bad faith.[6]   Id.

---

[4] The Court is aware that it is not bound by the ICANN arbitrator's decision.   See Barcelona.com, Inc. v. Exelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 625 (4th Cir. 2003) ("[A]ny decision made by a panel under the [Uniform Domain Name Dispute Resolution Policy ("UDRP")] is no more than an agreed-upon administration that is not given any deference under the ACPA."), Maruti.Com v. Maruti Udyog Ltd., 447 F. Supp. 2d 494, 496 n.10 (D. Md. 2006) ("The [arbitration] decision has no collateral estoppel or res judicata effect and is entitled to no deference from the district court.").   The Court considers the ICANN proceeding only as evidence of the facts as they existed at the time of the proceeding.

[5] The 2000 action was filed pursuant to the ICANN UDRP, http://www.icann.org/en/dndr/udrp/policy.htm (last viewed January 12, 2009).

[6] The arbitrator specifically relied upon the total absence of competition between NNHC's business and VCV's business at the time of the proceeding in reaching his decision. Pl.'s Mem. Supp. Ex. A-10 at 12.   Although not relevant here, the Court notes that in a separate ICANN proceeding, unrelated to the NEWPORTNEWS.COM domain name, an arbitrator concluded that VCV registered numerous domain names with the clear intent to resell the domain names at a later date for profit. Pl.'s Mem. Supp. Ex. A-11 at 4 ("Respondent has engaged in a clear pattern of conduct of trafficking for gain

3

Subsequent to the ICANN arbitration, significant changes were made to the website accessible under the domain NEWPORTNEWS.COM. Amended Compl. ¶ 18; Pl.'s Mem. Supp. 8, Ex. A-13, Ex. A-17; Def.'s Mem. Opp'n 5-7.   From 2005 through 2007, advertisements for Spiegel[7] appeared on NEWPORTNEWS.COM.   Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem. Opp'n Sum. J.")   7.   Spiegel contracted with Performics for Performics to place Spiegel advertisements on Internet websites. Id.   Neither Spiegel nor NNHC were aware that Spiegel advertisements were placed on the NEWPORTNEWS.COM website until 2007, at which time NNHC instructed Performics to remove the Spiegel advertisements from the NEWPORTNEWS.COM website.   Id.   In February 2007, for a two-week period, NNHC arranged for NEWPORT NEWS advertisements to be placed on the NEWPORTNEWS.COM website to determine the impact that the NEWPORTNEWS.COM website had on NNHC's business. Pl.'s Mem. Supp. 6.   At no point did NNHC directly contract with VCV to have either Spiegel or NEWPORT NEWS advertisements placed on VCV's website.   Pl.'s Mem. Supp. 6, Pl.'s Mem. Opp'n Sum. J. 7-9.   Then, in November 2007, VCV transformed the website from one that was a gateway to services in Newport

---

preregistered domain names, as if they were inventory items for sale.").

[7] Spiegel is a women's clothing company managed by NNHC. Defendants' Statement of Undisputed Facts ("Def.'s Undisp. Facts") ¶¶ 104-105.

News, Virginia, Pl.'s Mem. Supp. Ex. A-13, to one that is a gateway to women's fashion, Pl.'s Mem. Supp. Ex. A-17.  Pl.'s Mem. Supp. 8; Def.'s Mem. Opp'n 6.

On at least two occasions, NNHC made offers to VCV to purchase the NEWPORTNEWS.COM domain name.  Pl.'s Mem. Supp. 7; Def.'s Mem. Opp'n 4.  VCV rejected each purchase offer extended by NNHC.[8]  Id. In response to one of NNHC's offers, VCV indicated that it would sell the domain name for a "seven-figure" dollar amount.  Pl.'s Mem. Supp. 7.  VCV also made a counteroffer – VCV offered to maintain ownership of the domain name, offer NNHC goods for sale on the website, and accept a percentage of generated revenue for operating the site.  Id.

On February 21, 2008, NNHC filed its Complaint alleging federal trademark infringement, federal false advertising and unfair competition, common law trademark infringement, common law unfair competition, copyright infringement, and unjust enrichment. The Complaint was amended on November 20, 2008 to add a claim for violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  NNHC filed the instant motion for partial summary judgment on its ACPA claim on November 28, 2008.

## II. Standard for Summary Judgment

The Court shall grant summary judgment if, viewing the record

---

[8]  In one of the offers, NNHC offered to purchase the NEWPORTNEWS.COM domain name for $108,000.  Def's. Mem. Opp. 5.

as a whole, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). On summary judgment, the Court views "the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted). To defeat summary judgment, the non-moving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324 (quotations omitted). Facts are deemed material if they might affect the outcome of the case. Id. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir.

6

1995) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)).  Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," <u>Celotex</u>, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element.  Fed. R. Civ. P. 56(e)).

### III. <u>The Anticybersquatting Consumer Protection Act</u>

In 1999, Congress enacted the ACPA. Cybersquatting refers to the "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." S. Rep. No. 106-140, at 4 (1999).  Cybersquatters register "'well-known brand names as internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'" <u>Virtual Works, Inc. v. Volkswagen of America, Inc.</u>, 238 F.3d 264, 267 (4th Cir. 2001) (citing S. Rep. No. 106-140, at 5).  "Cybersquatting is profitable because while it is inexpensive for a cybersquatter to register the mark of an established company as a domain name, such companies are often vulnerable to being forced into paying substantial sums to get their names back." <u>Id.</u> at 267 (citing <u>Sporty's Farm, LLC v. Sportsman's Market, Inc.</u>, 202 F.3d 489, 493 (2d Cir. 2000)).

7

In order to prevail on a claim under the ACPA, a plaintiff must show that (1) Plaintiff has a distinctive or famous mark,[9] (2) Defendant's domain name is the same or confusingly similar to Plaintiff's mark, and (3) Defendant has a bad faith intent to profit from the use of Plaintiff's mark.   15 U.S.C. § 1125(d)(1)(A);   see also   Venetian Casino Resort, LLC v. Venetiangold.com, 380 F. Supp. 2d 737 (E.D. Va. 2005), Domain Name Clearing Co., LLC v. F.C.F. Inc., 16 Fed. Appx. 108 (4th Cir. 2001)(unpublished).

### A. NNHC's NEWPORT NEWS Mark is Distinctive

"The protection accorded trademarks is directly related to the mark's distinctiveness." Sara Lee Corp. v. Kayser Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996).[10]   Inherently distinctive marks – those that are fanciful, arbitrary, or suggestive – receive the greatest protection.   Id.  Marks that are merely descriptive are not inherently distinctive and become distinctive only if they acquire a secondary meaning. Venetian Casino Resort, 380 F. Supp.

---

[9] VCV argues, based on PETA v. Doughney, 263 F.3d 359 (4th Cir. 2001), and Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005), that a mark must be both distinctive and famous to receive protection under the ACPA.   Def.'s Mem. Opp'n 8-10.   This is, however, a clear misstatement of the law and Fourth Circuit precedent.

[10] The Court notes that Sara Lee is a trademark case rather than an ACPA case. However, courts have routinely applied the same analysis of distinctiveness of a mark in ACPA cases as in traditional trademark cases.   See, e.g., Venetian Casino Resort, 380 F. Supp. 2d at 741-743 (applying traditional distinctiveness analysis in an ACPA claim).

2d at 742. Further, the United States Patent and Trademark Office ("USPTO") will not place a mark on its Principal Register if the mark is merely descriptive or if the mark is primarily geographically descriptive of the trademark applicant's goods unless there is proof of secondary meaning. 15 U.S.C. § 1052(e). Registration of a mark on the Principle Register without requiring proof of secondary meaning is prima facie evidence that "the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection." Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 542 (4th Cir. 2004).

NNHC's mark is inherently distinctive because the NEWPORT NEWS mark is arbitrary. In determining whether a geographic term is descriptive, and therefore not inherently distinctive, the Court considers whether the mark is the name of the place from which the goods actually come, whether the term is likely to indicate to reasonable buyers that the goods come from the place named, and whether the place is noted for the particular goods. See 2 McCarthy on Trademarks and Unfair Competition § 14:7 (4th ed. 2008). Here, there is no evidence to suggest that the NEWPORT NEWS line of fashions actually comes from Newport News, Virginia. Nor is there any evidence that reasonable buyers would believe that NNHC's products come from Newport News, Virginia or that Newport News, Virginia is noted for women's fashion. NNHC's mark, although a geographic term, is arbitrary and, therefore, inherently

9

distinctive.

Additionally, the USPTO registered NNHC's marks on its Principle Register without requiring proof of secondary meaning. Pl.'s Mem. Supp. 2, Ex. A-3.  The registration is prima facie evidence that the mark is distinctive and entitled to trademark protection.   Retail Services, Inc., 364 F.3d at 542; see also Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 (4th Cir. 1984) (stating that registration endows a mark with a presumption of validity).   VCV has failed to designate any facts to create a genuine issue as to the validity of NNHC's trademark registration or the distinctiveness of NNHC's NEWPORT NEWS mark.

Further, the Court notes that NNHC registered its mark in 1992 and 1995, well before VCV purchased the NEWPORTNEWS.COM domain name in October 1997.   Therefore, NNHC's mark was distinctive at the time of the registration of the domain name, as required for a violation of the ACPA.  15 U.S.C. § 1125(d)(1)(A)(ii)(I).

## B. VCV's Domain Name is the Same or Confusingly Similar to NNHC's Mark

In an action under the ACPA, the Court looks to whether the defendant's domain name is the same or confusingly similar to the plaintiff's registered mark.  See Venetian Casino Resort, 380 F. Supp. 2d at 743 ("'[C]onfusing similarity' must simply mean that the plaintiff's mark and the defendant's domain name are so similar in sight, sound and meaning that they could be confused.") (citing McCarthy § 25:78 (4th ed. 2004)); see also McCarthy § 25:78

(stating that under the ACPA, the issue is whether the accused domain name is confusingly similar to the plaintiff's mark). Here, the Court is comparing VCV's domain name "NEWPORTNEWS.COM" to NNHC's mark "NEWPORT NEWS." This inquiry must be undertaken without regard to the goods or services of either party.[11]  15 U.S.C. § 1125(d)(1)(A). When the plaintiff's mark is distinctive, as is the case here, a defendant is liable under the ACPA if he registers, traffics in, or uses a domain name that is identical or confusingly similar to the plaintiff's mark.  15 U.S.C. § 1125(d)(1)(A)(ii)(I).

Because the only differences between the domain and the mark are the deletion of a space and the addition of ".com.", it is clear to the Court that VCV's domain name is the same as NNHC's mark. The addition of the top-level[12] ".com" domain to NNHC's mark is insignificant and insufficient to make VCV's domain name

---

[11] In a case for trademark infringement, the similarity or likelihood of confusion between the parties' goods and services would be relevant. See McCarthy § 25:26 (stating that the Lanham Act imposes liability for infringement of a registered mark upon any person who uses an infringing mark in connection with the sale or advertising of goods or services when such use is likely to cause confusion). Analysis of the underlying goods and services of the parties, however, is irrelevant to NNHC's ACPA claim.  15 U.S.C. § 1125 (d)(1)(A).

[12] There are six standard, top-level domains (.com, .edu, .gov, .mil, .net, .org), Shade's Landing, Inc. v. Williams, 76 F. Supp. 2d 983, 990 (D. Minn. 1999).

11

dissimilar from NNHC's mark.[13]

NNHC presented no discussion of the application of this element of an ACPA claim with respect to the NEWPORTNEWS.VCV.COM domain name.

### C. VCV Has Bad Faith Intent to Profit from Use of NNHC's Mark

The final requirement for a defendant to be liable under the ACPA is that he have the bad faith intent to profit from registering, trafficking in, or using the plaintiff's mark. 15 U.S.C. § 1125(d)(1)(A)(I).

> In determining whether a person has a bad faith intent . . . , a court may consider factors such as, but not limited to
>
> (I)   the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II)  the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain in connection with the bona fide offering of any goods or services;
>
> (IV)  the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V)   the person's intent to divert consumers from the mark owner's online location to a site accessible

---

[13] The Court notes that the ICANN arbitrator found that VCV's domain name was identical to NNHC's mark. Pl.'s Mem. Supp. Ex. A-10 at 5, 7.  The ICANN proceeding, however, was concerned with a claim of trademark infringement, which required the arbitrator to undertake a likelihood of confusion analysis.  At the time, based upon the content of VCV's website, no likelihood of confusion was found.  Id. at 7-9.

under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)   the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)  the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names . . . without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)of this section.

15 U.S.C. § 1125(d)(1)(B)(i). The statute further provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

In determining whether the defendant has a bad faith intent to profit, the Court does not simply tally up how many of the nine

13

statutory factors favor each party. See Lamparello v. Falwell, 420
F.3d 309, 319 (4th Cir. 2005) ("'[C]ourts do not simply count up
which party has more factors in its favor after the evidence is
in.'") (citing Harrods Ltd. v. Sixty Internet Domain Names, 302
F.3d 214, 234 (4th Cir. 2002)). Further, the Court is not limited
to the nine enumerated factors in the ACPA when determining whether
a defendant has the bad faith intent to profit from the use of a
plaintiff's mark. 15 U.S.C. § 1125(d)(1)(B)(i); Lamparello, 420
F.3d at 319-20 ("The factors are given to courts as a guide, not as
a substitute for careful thinking about whether the conduct at
issue is motivated by a bad faith intent to profit.") (citations
omitted); Domain Name Clearing Co., 16 Fed. Appx. at 111 ("A court
may look at the totality of the circumstances in making bad faith
determinations.").

### i.

The first two factors are the intellectual property rights of
the defendant and the extent to which the domain name consists of
a name of the defendant. 15 U.S.C. § 1125(d)(1)(B)(I). The
parties do not dispute that VCV has no trademark or other
intellectual property rights in the domain name NEWPORTNEWS.COM and
that the domain name does not consist of a legal name of VCV or a
name that is commonly used to identify VCV. Pl.'s Mem. Supp. 18;
Def.'s Mem. Opp'n 11-12. VCV argues that these two factors are
inapplicable, Def.'s Mem. Opp'n 12, but the Court disagrees. If

14

VCV had intellectual property rights in the domain name or the domain name incorporated a name commonly used to identify VCV, it would favor VCV's argument that it did not have bad faith intent in using the domain name.   See Harrods Ltd., 302 F.3d at 234-35 (explaining that these factors favor the defendant where the facts demonstrate the defendant has intellectual property rights in the domain or is commonly identified by the domain name).   Therefore, factors (I) and (II) favor NNHC.

ii.

Factor (III), the defendant's prior use of the domain name in connection with the bona fide offering of any goods or services, also favors NNHC.

> This factor recognizes that the legitimate use of the domain name in online commerce may be a good indicator of the intent of the person registering that name.   Where the person has used the domain in commerce without creating a likelihood of confusion as to the source or origin of the goods or services and has not otherwise attempted to use the name in order to profit from the goodwill of the trademark owner's name, a court may look to this as an indication of the absence of bad faith on the part of the registrant.

S. Rep. 106-140, at 13-14 (1999).   VCV's entire argument for why factor (III) should favor VCV is that the ICANN arbitrator concluded that in 2000 VCV did offer bona fide services under the NEWPORTNEWS.COM domain name.   Def.'s Mem. Opp'n 12.   VCV's prior, legitimate use of the NEWPORTNEWS.COM domain name demonstrates that VCV lacked bad faith when it registered the NEWPORTNEWS.COM domain. The ACPA, however, creates liability for more than just bad faith

15

registration of domain names.  <u>See</u> 15 U.S.C. § 1125(d)(1)(A)(ii)
(creating liability for registering, trafficking in, or using a
domain name with the bad faith intent to profit from another's
mark). Also, Congress clearly intended that this factor would no
longer evidence an absence of bad faith when the owner of the
domain name ceases offering bona fide goods or services and instead
creates a likelihood of confusion or otherwise uses the domain name
to profit from the goodwill of the trademark.  S. Rep. 106-140, at
13-14.   Because VCV substantially changed the content of the
website and ceased to offer bona fide services related to the city
of Newport News, Virginia, this factor favors NNHC.

### iii.

Factors (IV) and (V), the defendant's bona fide fair use of
the mark and the defendant's intent to divert consumers from the
mark owner's online location to a site accessible under the domain
name, also favor NNHC.  VCV's claims of fair use and lack of intent
to divert consumers are unpersuasive.   The Fair Use Doctrine
applies when the defendant "argues that it is not using a . . .
geographically descriptive . . . designation in a trademark sense,
but only to describe the defendant's goods or services, or their
geographic origin, or to name the person involved in running the
business." 2 <u>McCarthy</u> § 11:45.  On VCV's website, Newport News is
no longer used to describe VCV's goods and services, or their
geographic origin, because the site is dedicated primarily to

16

women's fashion.[14]   See Pl.'s Mem. Supp. Ex. A-17 (depicting the appearance of the NEWPORTNEWS.COM website).   Further, VCV's argument that many others currently use the terms "Newport" and "News" or a combination of the two in their domain names does nothing to render VCV's use a fair use.  The only relevant question to the Court under the fourth factor is whether VCV's use of Newport News is a fair use, which is determined by how VCV uses the term, and not how other parties may be using the term.   Simply identifying a term as a geographic term does not make any use of the term a fair use.   Therefore, the fair use doctrine is not a meritorious defense.

VCV next argues that the placement of a disclaimer[15] on its website demonstrates that it has no bad faith intent.  VCV contends that the disclaimer would prevent consumer confusion between VCV's website and one operated by NNHC.  Def. Mem. Opp'n 13, 17.   This argument, however, mistakes a claim for trademark infringement with one under the ACPA.   The ACPA is concerned with whether the contested domain name is similar to the plaintiff's mark without regard to the underlying goods and services.   15 U.S.C. § 1125(d)(1)(A).  Courts have routinely held that a disclaimer on a

---

[14] VCV concedes that Newport News is not the name or common identifier of anyone associated with running its business.  Def.'s Mem. Opp'n 12.

[15] The disclaimer states, "We are Newport News, Virginia. We are not Newport News Fashion Catalog!"

17

site does not save a defendant from ACPA liability.  See, e.g.,
PETA v. Doughney, 263 F.3d 359 (4th Cir. 2001) (upholding a
violation of the ACPA even though the  defendant had placed a
disclaimer on his website); Coca Colo Co. v. Purdy, 382 F.3d 774,
783 (8th Cir. 2004) ("The fact that confusion about a website's
source or sponsorship could be resolved by visiting the website is
not relevant to whether the domain name itself is identical or
confusingly similar to a plaintiff's mark."), Anlin Industries,
Inc. v. Burgess, No. 1:05cv1317, 2007 WL 715687, at *6 (E.D. Cal.
March 5, 2007) ("Focusing on the domain name, courts have concluded
that the use of a disclaimer does not save a domain name from
cybersquatting liability as the internet user must access the site
before seeing the disclaimer.").  Because a consumer would first
have to visit the NEWPORTNEWS.COM website before it saw VCV's
disclaimer, the placement of a disclaimer on the NEWPORTNEWS.COM
website does not nullify an assertion of bad faith.  It is still
possible, in spite of the disclaimer, that a consumer would confuse
NEWPORTNEWS.COM with NEWPORT NEWS.

**iv.**

Factor (VI), the defendant's offer to transfer or sell the
domain name to the plaintiff without having an intent to use the
domain name in the bona fide offering of any goods or services,
also favors NNHC.  The parties do not contest that VCV at one time
used the NEWPORTNEWS.COM domain name as a virtual city website, in

18

a bona fide offering of services related to the city of Newport News, Virginia. In order for this factor to weigh in favor of a defendant, the defendant must have a continuing intent to use the domain name in a bona fide offering of goods or services.  15 U.S.C. § 1125(d)(1)(B)(i)(VI) (stating that a court may consider "the person's offer to transfer, sell, or otherwise assign the domain name . . . without . . having an intent to use the domain name in the bona fide offering of any goods or services").

NNHC and VCV agree that NNHC made at least two attempts to purchase the NEWPORTNEWS.COM domain name from VCV.  Pl.'s Mem. Supp. 7; Def.'s Mem. Opp'n 14.  VCV rejected each of these offers. Id.  It is clear to the Court from the pleadings in this case that VCV rejected the offers from NNHC because VCV believed the offers to be too low.  See Def.'s Mem. Opp'n 14 ("NEWPORTNEWS.COM is worth between three to six million dollars.") and Defendants' Counterclaim 4-5 ("[T]he value of VCV's 'newportnews.com' domain name to NNHC is considerably higher than its current economic return to VCV," and "NNHC's present litigation is an attempt to improperly divest VCV of its valuable domain and web site."). Further, VCV's contention that there is no bad faith because VCV never initiated the bargaining process, Def.'s Mem. Opp'n 14, is unpersuasive.[16]  VCV does not contest, and also does not designate

---

[16] VCV cites Taubman Co. v. Webfeats, 319 F.3d 770, 776 (6th Cir. 2003), for the proposition that there is no bad faith because NNHC was the only party to initiate the bargaining process.

19

any specific facts to contest, that VCV made a counteroffer to NNHC of millions of dollars or that VCV offered to sell NNHC's goods in exchange for royalty payments.[17] The Court finds that both the counteroffer and the offer of a franchise agreement[18] were attempts by VCV to offer for transfer or sale the NEWPORTNEWS.COM domain name to NNHC; therefore, the sixth factor favors NNHC.

**v.**

Factor (VII), the defendant's provision of false contact information when registering the domain name, clearly favors VCV; NNHC has conceded this. There is no evidence that VCV provided material and misleading contact information when it registered the

---

Taubman, however, is distinguishable. First, Taubman involved a claim for trademark infringement, not for violation of the ACPA. Second, there, the Court was faced with the question of whether the defendant had used the plaintiff's mark "in connection with the sale of goods" and was therefore a commercial use. Id. The question was not whether the defendant had the bad faith intent to profit from the use of the plaintiff's mark.

[17] The Court sees no relevant distinction between VCV making an explicit counteroffer and VCV suggesting that NNHC make a higher offer.

[18] VCV cites Hartog & Co. AS v. SWIX.com, 136 F. Supp. 2d 531, 540 (E.D. Va. 2001), to suggest that offering to act as a franchisee cannot be characterized as an attempt to sell a domain name. The facts in Hartog, however, are distinguishable. In Hartog, the defendant never made any offer to transfer or sell the contested domain name, which was essential to his own business. Id. In an attempt to resolve the dispute between the parties, the defendant offered a sub-domain name to the plaintiff and in the alternative offered to act as a distributor of the plaintiff's goods. Id. The Court in Hartog refused to characterize this transaction as an offer to sell the contested domain name in exchange for distributorship rights to the plaintiff's products. Id.

NEWPORTNEWS.COM domain name or that VCV has failed to maintain accurate contact information.

Factor (VIII) is the defendant's registration of multiple domain names that the defendant knows are identical to the marks of others that are distinctive at the time of registration.   This factor favors VCV.  VCV owns at least thirty-one (31) domain names for various geographic locations.  Pl.'s Mem. Supp. 21; Def.'s Mem. Opp'n 15.  Because VCV is in the business of creating virtual city websites, and the domain names that VCV has registered are related to specific geographic areas, the Court does not believe that VCV necessarily knew at the time that it registered the NEWPORTNEWS.COM domain name that it was identical or confusingly similar to NNHC's mark.[19]  Under the statute, registering multiple domain names is not, by itself, evidence of bad faith intent.   15 U.S.C. § 1125(d)(1)(B)(i)(VIII); therefore, the eighth factor favors VCV.

**vi.**

In addition to the multiple statutory factors that favor NNHC, VCV demonstrated its bad faith intent to profit from the use of the NEWPORTNEWS.COM domain name when it completely changed the website from one giving information about Newport News, Virginia to a website dominated by advertisements and articles about women's

---

[19] It is clear, however, that after the ICANN arbitration, which informed VCV that its domain name was the same as NNHC's mark, VCV took active steps to convert the NEWPORTNEWS.COM website from a virtual city site to a women's fashion website.

fashion.   See Pl.'s Mem. Supp. Ex. A-17 (showing the
NEWPORTNEWS.COM website as it existed on May 23, 2008).  VCV knew,
or should have known, that these changes would give rise to some
type of liability, possibly even trademark infringement, because
the ICANN arbitrator specifically concluded that it was the lack of
connection to women's fashion that made it unlikely that NNHC
consumers would confuse the NEWPORTNEWS.COM website with one
sponsored by NNHC.  Pl.'s Mem. Supp. Ex. A-10 at 8-10.  Further,
the arbitrator found that it was the explicit offering of
information about the city of Newport News and not women's fashion
that was a legitimate business interest of VCV.  Id. at 10. VCV's
only motive for making the changes to the website was to realize
profits from using NNHC's NEWPORT NEWS mark, and VCV had no
reasonable grounds to believe that its use of the domain name in
connection with women's fashion was a fair or lawful use.

VCV's actions after the ICANN arbitration are the most
significant factor in the Court's determination of VCV's bad faith.
The ICANN proceeding gave VCV a very clear explanation of how VCV
could use the NEWPORTNEWS.COM domain name in a legitimate and good
faith manner.  Id.  In spite of the ICANN determination, and in
direct contradiction to the written opinion from the ICANN
proceeding, VCV transformed its NEWPORTNEWS.COM website into one
dedicated to women's fashion.  This Court views VCV's conduct as an
egregious violation of the ACPA, which demonstrates a blatant

22

disregard for NNHC's rights as the holder of the NEWPORT NEWS mark.

NNHC presented no discussion as to how each of the statutory factors for determining bad faith intent apply to VCV's NEWPORTNEWS.VCV.COM domain name. NNHC's discussion of the NEWPORTNEWS.VCV.COM is used as additional evidence of VCV's bad faith with regard to VCV's use of the NEWPORTNEWS.COM domain name. Pl.'s Mem. Supp. 11; Pl.'s Reply 12-13.

### IV. NNHC's Claim is Not Barred by Laches

"Estoppel by laches generally applies in a trademark infringement action to preclude relief for an owner of a mark who has unreasonably slept on his rights." What-A-Burger of Va., Inc. v. Whataburger, Inc., 357 F.3d 441, 448 (4th Cir. 2004). "Courts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom." Id. at 449. In determining whether to apply laches to bar a trademark claim, the Court considers whether the mark owner knew of the infringement, whether the delay in challenging the infringement was inexcusable or unreasonable, and whether the infringing user was prejudiced by the delay. Id. at 448-49. Here, it is clear that VCV registered the NEWPORTNEWS.COM domain name in 1997, but after the ICANN arbitration in 2000, NNHC had no reason to believe that it would be successful if it brought a trademark claim in federal

23

court.  Delay in asserting a claim is not sufficient to trigger laches; the delay must be unreasonable.  Id. at 449.  "[R]egardless of when the trademark owner initially discovers the use of a similar mark, action against the infringing user is not necessary until, in light of the circumstances, the right to protection has clearly ripened."  Id.  The relevant consideration for the Court is the time at which the use became an infringing use.  Id.  Here, VCV's use of the NEWPORTNEWS.COM domain name became an infringing use when VCV changed the website from one that was dedicated to providing information about Newport News, Virginia to one that is dedicated to providing information about women's fashion.  This changed occurred in or about November 2007.  The instant litigation began in February 2008, and NNHC filed its First Amended Complaint alleging a violation of the ACPA in November 2008.  At most, one year passed between when the infringing use began and when NNHC asserted its claims.  This delay is not unreasonable, and, therefore, laches does not serve to bar NNHC's ACPA claim.

### V. NNHC's Claim is Not Barred by Acquiescence

"An infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement.  Sara Lee Corp., 81 F.3d at 462.  VCV argues that NNHC consented to the use of NEWPORTNEWS.COM as a fashion website when NNHC and its commonly-

24

managed company, Spiegel, paid to have their advertisements placed on the NEWPORTNEWS.COM website. Def.'s Mem. Opp'n 21-22. Neither Spiegel nor NNHC directly contracted, however, with VCV for the placement of any advertisements on the NEWPORTNEWS.COM website – Spiegel contracted with Performics to place Spiegel advertisements on the Internet and NNHC has an arrangement with Google through NNHC's agent iProspect. Pl.'s Mem. Opp'n Sum. J. 7-8. The advertisements were terminated when NNHC became aware that the advertisements were appearing on the NEWPORTNEWS.COM website. Id. at 8-9; Def.'s Mem. Opp'n 4-6. NNHC was never in any direct contractual relationship with VCV for the placement of NNHC advertisements on the NEWPORTNEWS.COM website, Pl.'s Mem. Opp'n Sum. J. 7-9, and therefore there was no affirmative act by NNHC from which VCV could have concluded that NNHC expressly or impliedly consented to VCV transforming the NEWPORTNEWS.COM website into a women's fashion website.

## VI. Conclusion

The Court HOLDS that NNHC's NEWPORT NEWS mark is distinctive, that VCV's NEWPORTNEWS.COM domain name is the same as NNHC's mark, and that VCV used NNHC's mark with a bad faith intent to profit from the mark. Pursuant to 15 U.S.C. § 1125(d)(1)(C), the Court ORDERS that VCV shall transfer the domain name NEWPORTNEWS.COM to NNHC. The Court defers the question of damages and attorneys'

fees, if any.[20]

NNHC has put forth no evidence and has presented no discussion on whether the NEWPORTNEWS.VCV.COM domain name is the same or confusingly similar to its NEWPORT NEWS mark.  NNHC has also failed to demonstrate that VCV has the bad faith intent to profit from the NEWPORT NEWS mark with regard to the registration, trafficking, or use of the NEWPORTNEWS.VCV.COM domain.  In fact, in both Plaintiff's Memorandum in Support of their Motion for Partial Summary Judgment and Plaintiff's Reply, NNHC merely offers that VCV's registration of the NEWPORTNEWS.VCV.COM website is further evidence of VCV's bad faith intent with respect to the NEWPORTNEWS.COM domain name. Pl.'s Mem. Supp. 11; Pl.'s Reply 12-13.  Because the NEWPORTNEWS.VCV.COM domain name is not currently in use, Def.'s Mem. Opp'n 19., and NNHC has not met the statutory factors for an ACPA claim with respect to the NEWPORTNEWS.VCV.COM domain name, the Court declines to award summary judgment with regard to the NEWPORTNEWS.VCV.COM domain. The Court recognizes that it might be possible for VCV to use the NEWPORTNEWS.VCV.COM website

---

[20] Pursuant to 15 U.S.C. § 1117(a), NNHC is entitled to recover, subject to the principles of equity, damages in the amount of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  If the Court determines the case to be exceptional, the Court may also award reasonable attorney fees.  Id.  Because the Court has found a violation of the ACPA, NNHC may elect to recover statutory damages under 15 U.S.C. § 1117(d) rather than actual damages under subsection (a).

in furtherance of its legitimate business interests.[21]

 IT IS SO ORDERED.

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 3, 2009

---

[21] The Court observes that VCV would likely face further litigation initiated by NNHC for violations of the ACPA and the Lanham Act, 15 U.S.C. § 1051, et seq., if VCV were to associate the NEWPORTNEWS.VCV.COM domain name with a website relating to women's fashion.

27